683 P.2d 323

Donald R. DIAMOND and Joan B. Diamond, husband and wife, William A. Estes, Jr., and Shirley A. Estes, husband and wife, James N. Shedd and Jane P. Shedd, husband and wife, and W. James Harrison, Esq., in his capacity as Receiver in Pima County Superior Court No. 180048, Plaintiffs/Appellees,

v.

William H. KENNER and Jane Doe Kenner, husband and wife, David T. Pritchard and Rose Varda Pritchard, husband and wife, Alan C. Levy and Jane Doe Levy, husband and wife, Leroy Johnson and Cheri Johnson, husband and wife, J. Vernon Wade and Linda Wade, husband and wife, Jack Gale and Ada Gale, husband and wife, Matt LePree and Frances LePree, husband and wife, Victor V. Livingston and Susanna Livingston, husband and wife, Richard Castic and Jane Doe Castic, husband and wife, Henry L. Schwartz, Sanford L. Schwartz, and Bette S. Nelson, in their capacities as Executors of the Estate of B. Davis Schwartz, deceased, Fairfield Sunrise Village, Inc., a corporation, Lakesites, Inc., a corporation, Stewart Title & Trust of Tucson, a corporation, in its capacity as Trustee under Trust No. 2204, Kenner's Charitable Hospital Trust, a corporation, and Aron and Fioramonti, P.C., a corporation, Defendants/Appellants.

No. 2 CA–CIV 5033.

Court of Appeals of Arizona, Division 2.

May 24, 1984.

Miller & Pitt, P.C. by Robert A. Fortuno, Tucson, for plaintiffs/appellees.

Terry W. Aron, Tucson, for defendant/appellant Lakesites, Inc.

OPINION

HOWARD, Judge.

This appeal requires us to write yet another chapter in the continuing saga of a parcel of real property located in Pima County known as the Rocking K Ranch. In our last episode, *Rosen v. Rae*, 132 Ariz. 509, 647 P.2d 640 (App.1982), we dismissed the appeal of the vendors of the ranch from

the judgment of the trial court ordering specific performance of a contract for the sale of the property and appointing a receiver to take control of the property. The present appeal arises from the summary judgment granted by the trial court, in an action commenced by the receiver and the vendees under the contract for sale, quieting title to the ranch in them as against appellant Lakesites, Inc. and numerous other defendants not parties to this appeal. For ease of reference, the vendors under the contract for sale will be referred to as "the Rae group" and the vendees will be referred to as "the Estes group."

The chronology of events leading up to the present action is as follows. On August 24, 1978, Joseph Rae as "Spokesman"[1] for Minnesota Title Company Trust Nos. 10,104, 10,106 and 10,123, and David T. Pritchard entered into an agreement pursuant to which Pritchard was granted an option to purchase approximately 750 acres of the Rocking K Ranch property. Neither this agreement nor any memorandum thereof was ever recorded.

In the spring of 1979, the Rae group (which included the three trusts which were parties to the Pritchard option agreement) began negotiating with the Estes group for the sale of the ranch. It is undisputed that the Estes group was originally interested in purchasing all 5,200 acres of the ranch, but that they were apprised of the existence of the Pritchard option by Joseph Rae and decided to revise their plans to purchase only the remaining 4,500 acres not covered by the option. It is also undisputed that the description of the property in the final agreement included approximately 90 acres in the southwest quarter of Section 21, T. 15 S., R. 16 E., G. & S.R.M., which was subject to the Pritchard option.[2] The agreement executed by the Rae group and the Estes group was dated effective June 8, 1979, and a memorandum thereof was recorded on June 12, 1979. An ancillary agreement between the parties was executed on June 19, 1979, and a memorandum recorded the same day.

By letter dated July 6, 1979, Rae advised Pritchard of the agreement between the Rae group and the Estes group, and that some of the option land was included in the sale agreement. He then urged Pritchard to "surrender" some of his land so that the sale could close, the Estes group could proceed with development of its part of the ranch, and Pritchard's remaining option land would thereby become more valuable.

Pritchard responded to Rae's request by letter dated September 7, 1979, in which he agreed to release approximately 240 acres in Section 27, T. 15 S., R. 16 E., G. & S.R.M. and an unspecified amount of acreage in Section 22, in return for Rae's agreement to postpone the due dates of payments owed under the option agreement. The letter agreement was executed by Rae.

Appellant Lakesites, Inc. was incorporated on August 10, 1979. Its incorporators were two employees of Joseph Rae who, along with Rae, also served as the initial board of directors. Stephen Rae, son of Joseph, was the corporation's vice president.

On December 5, 1979, Joseph Rae, again as "Spokesman" for Minnesota Title Company Trust Nos. 10,104, 10,106, 10,123 and also Trust Nos. 10,223 and 10,245, and as president of Rocking K Water Company, entered into an Agreement for Purchase

---

1. Although the trust agreements for these trusts were not made a part of the record, from other instruments in the record it appears that Joseph Rae was neither the trustee nor the beneficiary of any of the three trusts, nor does this agreement set forth the source and extent of Rae's authority to act on behalf of the trusts with respect to its property. The recitation in the agreement that "Seller, having recently been indicted, is in dire need of funds with which to defend said indictment" gives us further pause. While these matters raise questions as to the binding effect of this agreement upon either the trustee or the beneficiaries, and such instruments play havoc with record title to the property, no issue has been raised on this basis as to Rae's authority to bind the trusts by the execution of this option agreement.

2. A comparison of the descriptions appended to the two agreements indicates that the total area of overlap exceeds 400 acres. Only this 90-acre parcel is in dispute here.

and Sale of Real Estate with Lakesites. Pursuant to this agreement, Lakesites was to purchase approximately 455 acres of the Rocking K Ranch, including the 90-acre parcel which was also subject to the Pritchard option and the Rae-Estes agreements.[3] Pritchard also executed the agreement, which as to him provided as follows:

"26. David T. Pritchard joins in the execution of this Agreement solely for the purpose of consenting thereto, said David T. Pritchard holding an Option, in his sole and separate right, to purchase a portion of the subject property.

\* \* \* \* \* \*

30. Notwithstanding any other terms or provisions contained in this Agreement, or any possible implications therefrom, David T. Pritchard shall receive 75 per cent (75%) of all sums required to be paid and which are paid under paragraphs 1.A and 1.B, the same being in consideration of the said Pritchard having released from his Option 220 acres in exchange for 80 acres. In addition, David T. Pritchard shall receive approximately 34 per cent (34%) of the purchase money mortgage referred to in paragraph 1.C, the same being in consideration of said Pritchard's Option covering a portion of the subject property."

The agreement does not describe either the 220 acres to be released or the 80 acres to be exchanged therefor, nor does the agreement set forth to whom the land is to be released, who is to convey the 80 acres, or who is to pay the monetary consideration.

By agreement dated June 15, 1980, Lakesites agreed to sell to Matt LePree and Frances LePree, husband and wife, a portion of the property subject to the Rae-Lakesites agreement, including the 90-acre parcel which was also subject to the Pritchard option and the Rae-Estes agreement.

The Rae-Estes agreement had not closed as of the summer of 1980, and the Estes group instituted an action in superior court sometime during this period seeking specific performance of the agreement and the appointment of a receiver for the property. Neither Lakesites, nor Pritchard, nor the LePrees were parties to the litigation.

On July 1, 1980, Rae [4] and Pritchard entered into a "Second Modification of Option Agreement." The agreement recites that on June 1, 1980, the parties had modified the original option by agreement under the terms of which Pritchard agreed to release 220 acres from his option "which Seller advised was necessary in order that he be able to close [the sale to the Estes group]." In return, Pritchard was to have received a deed to 80 acres together with $147,500 over a ten-year period out of the proceeds of the sale to the Estes group. This second modification also recites that "at the time said Modification was entered into, [Pritchard] exercised his option to purchase the property subject to the Option as modified, including the modified legal description. . . ." The agreement then notes Rae's inability to close the Estes sale because of pending litigation, and proceeds to set forth the parties' agreement to rescind the original modification with respect to the release of 220 acres and the transfer of $147,500, and to reinstate the original option agreement of August 24, 1978. Other undescribed modifications are specifically stated to remain in effect, and Pritchard expressly exercises his option to purchase the 750 acres subject to the original Option agree-

---

**3.** We note at this juncture that neither appellant nor the appellees furnished either the trial court or this court with a description of the parcel title to which is in issue as between these parties. A lengthy description of the entire 4,500-acre ranch was appended to appellees' complaint, and by comparing this with the descriptions in the Pritchard option and the Rae-Lakesite agreement, we have been able to ascertain the area of overlap. It is not this court's function to perform title examinations, however, and counsel have failed to comply with their obligations under Rule 13, Rules of Civil Appellate Procedure, 17A A.R.S.

**4.** The agreement states that Rae is acting in his capacity as spokesman for Minnesota Title Company Trust Nos. 10,104, 10,106 and 10,123. The signature line for the "Seller" was executed by Joseph Rae, but is underwritten by the words "Joseph Rae and Family." No issue has been raised by the parties as to the effect of this discrepancy.

ment, as modified. Neither the first modification agreement nor the memorandum thereof, which was recorded, was made a part of the record before us.

On July 11, 1980, a deed to the 750 acres of the option property, dated August 24, 1978 and executed by Joe Rae as spokesman for the three trusts in favor of Pritchard, was recorded.

On July 17, 1980, a receiver was appointed to take control of the ranch property, including the 90 acres here in dispute.

On July 31, 1980, a memorandum of the December 5, 1979 Rae-Lakesites agreement was recorded, and on August 25, 1980, a memorandum of the Lakesites-LePree agreement was recorded.

Summary judgment for specific performance of the Rae-Estes agreement in favor of the receiver and the Estes group was entered by the court on October 20, 1980, and on November 7, the complaint in the present action was filed.

The basis for appellees' motion for summary judgment against Lakesites was that the Rae-Lakesites agreement was subsequent in time to the Rae-Estes agreement, that Lakesites had actual and constructive notice of the prior sale, and that the interest of the Estes group in the property therefore had priority. Lakesites' opposition to the motion was based on the premise, unsupported by any evidence other than the agreement itself, that Lakesites had acquired Pritchard's interest under the terms of the Rae-Lakesites agreement. The major thrust of its argument was directed toward convincing the trial court that the Estes group had actual notice of the outstanding option at the time they entered into the Rae-Estes agreement, and that Lakesites' rights under the option therefore had priority over the rights of the Estes group under their contract for sale. Appellees' reply disputed this interpretation of the agreement and argued that, at best, Lakesites took the property subject to Pritchard's option.

■ The central premise of Lakesites' argument is that the only reasonable construction of paragraphs 26 and 30 of the Rae-Lakesites agreement, quoted above, is as an assignment of the Pritchard option to Lakesites. Since the agreement is rendered ambiguous by its failure to describe the 220 acres to be "released" by Pritchard or to specify to whom the property was to be released, we may look to extrinsic evidence to ascertain the intent of the parties. See *LeBaron v. Crismon*, 100 Ariz. 206, 412 P.2d 705 (1966).

In support of appellees' position is the correspondence between Rae and Pritchard in July and September of 1979, as well as the Second Modification of Option Agreement executed the following summer. From these documents, it is apparent that Rae needed to extinguish Pritchard's interest in at least part of the option property and to reacquire the same in order to be able to perform his obligations under the Rae-Estes agreement. Further, if Pritchard's participation in the Rae-Lakesites agreement was intended as an assignment of the option property to Lakesites, a comparison of the descriptions contained in the Pritchard and Rae-Lakesites agreements should coincide at least to the extent of the 220 acres supposedly assigned to Lakesites. Instead, the descriptions overlap only to the extent of approximately 130 acres. Finally, the only evidence pertaining to the consideration paid under the agreement, which was introduced by Lakesites, consists of four checks, each in the amount of $25,000. These checks were drawn by Stephen Rae, made payable to Lakesites, and were stated on the face of each check to be consideration for the purchase of shares of the corporation. Each check in turn was endorsed by Stephen Rae, as vice president of Lakesites to Joseph Rae, as spokesman for the five trusts. Although each endorsement states that the sum constitutes payment of the amounts due semi-annually on July 30, 1980, through December 1, 1981, under the terms of the Rae-Lakesites agreement, all four checks are dated June 30, 1980, and none of them was ever endorsed by Joseph Rae. There is no evidence whatsoever of any consideration paid to Pritchard by or on behalf of Lakesites.

In sum, Lakesites presented no evidence to the trial court which would support its position that the parties to the Rae-Lakesites agreement intended that Pritchard's option on the 220 acres be assigned to Lakesites rather than released to Rae. Although on a motion for summary judgment the facts are viewed in the light most favorable to the party opposing the motion, that party must nevertheless respond to the motion with specific facts showing that there is a genuine issue for trial. *MacConnell v. Mitten,* 131 Ariz. 22, 638 P.2d 689 (1981). Since Lakesites' opposition to the motion was premised upon its acquisition of a prior valid interest, its failure to present any evidence in support of that premise leads inescapably to the conclusion that summary judgment in favor of the appellees was properly granted.

The judgment of the trial court is affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.